B 5 (Official Form  5) (12/07)

| UNITED STATES BANKRUPTCY COURT<br><br>Southern District of New York | INVOLUNTARY PETITION |
|---|---|

| IN RE (Name of Debtor – If Individual:  Last, First, Middle)<br><br>Zohar CDO 2003-1, Corp. | ALL OTHER NAMES used by debtor in the last 8 years<br>(Include married, maiden, and trade names.) |
|---|---|
| Last four digits of Social-Security or other Individual's Tax-I.D. No./Complete EIN<br>(If more than one, state all.):<br>N/A | |
| STREET ADDRESS OF DEBTOR (No. and street, city, state, and zip code)<br><br>c/o The Corporation Trust Company<br>1209 Orange Street<br>Wilmington, DE 19801<br><br>COUNTY OF RESIDENCE OR PRINCIPAL PLACE OF BUSINESS<br><br>                                                                    ZIP CODE | MAILING ADDRESS OF DEBTOR (If different from street address)<br><br>c/o Puglisi & Associates<br>850 Library Avenue<br>Suite 204<br>Newark, DE 19711<br><br>                                                                    ZIP CODE |

| LOCATION OF PRINCIPAL ASSETS OF BUSINESS DEBTOR  (If different from previously listed addresses) |
|---|

| CHAPTER OF BANKRUPTCY CODE UNDER WHICH PETITION IS FILED<br><br>☐ Chapter 7      ✔ Chapter 11 |
|---|

### INFORMATION REGARDING DEBTOR (Check applicable boxes)

| Nature of Debts<br>(Check one box.)<br><br>Petitioners believe:<br><br>☐   Debts are primarily consumer debts<br>✔ Debts are primarily business debts | Type of Debtor<br>(Form of Organization)<br><br>☐   Individual (Includes Joint Debtor)<br>✔ Corporation (Includes LLC and LLP)<br>☐   Partnership<br>☐   Other (If debtor is not one of the above entities,<br>      check this box and state type of entity below.)<br><br>_____ | Nature of Business<br>(Check one box.)<br><br>☐   Health Care Business<br>☐   Single Asset Real Estate as defined in<br>      11 U.S.C. § 101(51)(B)<br>☐   Railroad<br>☐   Stockbroker<br>☐   Commodity Broker<br>☐   Clearing Bank<br>✔ Other |
|---|---|---|

| VENUE<br><br>☐   Debtor has been domiciled or has had a residence, principal<br>      place of business, or principal assets in the District for 180<br>      days immediately preceding the date of this petition or for<br>      a longer part of such 180 days than in any other District.<br><br>✔ A bankruptcy case concerning debtor's affiliate, general<br>      partner or partnership is pending in this District. | FILING FEE (Check one box)<br><br>✔ Full Filing Fee attached<br><br>☐   Petitioner is a child support creditor or its representative, and the form<br>      specified in § 304(g) of the Bankruptcy Reform Act of 1994 is attached.<br>      *[If a child support creditor or its representative is a petitioner, and if the*<br>      *petitioner files the form specified in § 304(g) of the Bankruptcy Reform Act of*<br>      *1994, no fee is required.]* |
|---|---|

| PENDING BANKRUPTCY CASE FILED BY OR AGAINST ANY PARTNER<br>OR AFFILIATE OF THIS DEBTOR (Report information for any additional cases on attached sheets.) | | |
|---|---|---|
| Name of Debtor | Case Number | Date |
| Relationship | District | Judge |

### ALLEGATIONS
#### (Check applicable boxes)

|  | COURT USE ONLY |
|---|---|
| 1.    ✔ Petitioner (s) are eligible to file this petition pursuant to 11 U.S.C. § 303 (b).<br>2.    ✔ The debtor is a person against whom an order for relief may be entered under title 11 of the United<br>        States Code.<br>3.a.  ✔ The debtor is generally not paying such debtor's debts as they become due, unless such debts are<br>        the subject of a bona fide dispute as to liability or amount;<br>                                                            or<br>  b.  ☐   Within 120 days preceding the filing of this petition, a custodian, other than a  trustee receiver, or<br>        agent appointed or authorized to take charge of less than substantially all of the property of the<br>        debtor for the purpose of enforcing a lien against such property, was appointed or took possession. | |

B 5 (Official Form  5) (12/07) – Page 2

**Name of Debtor** Zohar CDO 2003-1, Corp.

**Case No.**_____

| **TRANSFER OF CLAIM** |
|---|

✔ Check this box if there has been a transfer of any claim against the debtor by or to any petitioner.  Attach all documents that evidence the transfer and any statements that are required under Bankruptcy Rule 1003(a).

| **REQUEST FOR RELIEF** |
|---|

Petitioner(s) request that an order for relief be entered against the debtor under the chapter of title 11, United States Code, specified in this petition.  If any petitioner is a foreign representative appointed in a foreign proceeding, a certified copy of the order of the court granting recognition is attached.

Petitioner(s) declare under penalty of perjury that the foregoing is true and correct according to the best of their knowledge, information, and belief.

| | |
|---|---|
| x  /s/ Lynn Tilton | x   /s/ Jay M. Goffman                         11/22/2015 |
| Signature of Petitioner or Representative (State title) | Signature of Attorney                                      Date |
| Patriarch Partners XV, LLC          11/22/2015 | Skadden, Arps, Slate, Meagher & Flom LLP |
| Name of Petitioner              Date Signed | Name of Attorney Firm (If any) |
| | Four Times Square, New York, NY 10036 |
| Name & Mailing          Lynn Tilton | Address |
| Address of Individual    Patriarch Partners XV, LLC | (212) 735-3000 |
| Signing in Representative  One Broadway, 5th Floor | Telephone No. |
| Capacity                   New York, NY 10004 | |

| | |
|---|---|
| x_____ | x_____ |
| Signature of Petitioner or Representative (State title) | Signature of Attorney                                      Date |
| Name of Petitioner              Date Signed | Name of Attorney Firm (If any) |
| Name & Mailing | Address |
| Address of Individual | |
| Signing in Representative  _____ | Telephone No. |
| Capacity                    _____ | |

| | |
|---|---|
| x_____ | x_____ |
| Signature of Petitioner or Representative (State title) | Signature of Attorney                                      Date |
| Name of Petitioner              Date Signed | Name of Attorney Firm (If any) |
| Name & Mailing | Address |
| Address of Individual | |
| Signing in Representative  _____ | Telephone No. |
| Capacity                    _____ | |

| **PETITIONING CREDITORS** | | |
|---|---|---|
| Name and Address of Petitioner | Nature of Claim | Amount of Claim |
| Patriarch Partners XV, LLC<br>One Broadway, 5th Floor, New York, NY 10004 | Notes | $286,446,141.49 |
| Name and Address of Petitioner | Nature of Claim | Amount of Claim |
| Name and Address of Petitioner | Nature of Claim | Amount of Claim |
| Note:  If there are more than three petitioners, attach additional sheets with the statement under penalty of perjury, each petitioner's signature under the statement and the name of attorney and petitioning creditor information in the format above. | | Total Amount of Petitioners' Claims $286,446,141.49 |

_____0____ continuation sheets attached

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | : | |
| In re | : | Chapter 11 |
| | : | |
| ZOHAR CDO 2003-1, CORP., | : | Case No. 15-[_____] (RDD) |
| | : | |
| Debtor. | : | |
| | : | |
| | : | |

**CORPORATE OWNERSHIP STATEMENT OF**
**PATRIARCH PARTNERS XV, LLC**

In accordance with Rule 1010(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), which incorporates the disclosure required under Rule 7007.1 of the Bankruptcy Rules, Patriarch Partners XV, LLC (the "Petitioning Creditor"), hereby states that Zohar Holdings LLC is the sole member of the Petitioning Creditor (the "Sole Member") and no corporation directly or indirectly owns 10% or more of the Sole Member as of the date hereof.

In accordance with 28 U.S.C. § 1746, the undersigned hereby declares under penalty of perjury under the laws of the United States that they have reviewed the foregoing and that it is true and correct to the best of their information and belief.

Dated:  November 22, 2015

PATRIARCH PARTNERS XV, LLC

By:   _/s/ Lynn Tilton_____
Name: Lynn Tilton
Title:  Manager

## RULE 1003 STATEMENT REGARDING CLAIMS
## OF PATRIARCH XV, LLC

The undersigned hereby states that Patriarch Partners XV, LLC (the "Petitioning Creditor") holds claims totaling $286,446,141.49 against the company named in the attached involuntary petition (the "Debtor") arising out of class A-3 floating rate notes with an original principal face amount of $350,000,000. Such claims were acquired on March 26, 2015 for the approximate consideration of $103,919,863.34 as reflected in the attached documents. Such claims are based upon principal only and are exclusive of interest, fees, costs and other charges. The Petitioning Creditor acquired its claims on the open market for investment purposes and not for the purpose of commencing a bankruptcy case against the Debtor.

Dated:  November 22, 2015

PATRIARCH PARTNERS XV, LLC

By:     */s/ Lynn Tilton*
Name: Lynn Tilton
Title:  Manager

| Trade Reference |
|---|
| BBG98916/19258017 |

| Trade Date | Trade Time |
|---|---|
| 26 MAR 2015 | 16:24 |

| Value Date |
|---|
| 31 MAR 2015 |

| Transaction Type |
|---|
| TRADE |

000747 04FISSD1
PATRIARCH PARTNERS XV LLC
FLOOR 5, 1 BROADWAY
NEW YORK
NY 10004-1490
NEW YORK
USA



\*\*\* COPY \*\*\* \*\*\* AMENDMENT \*\*\*
Barclays Capital Inc. acted as agent on behalf of Barclays Bank PLC
in respect of this transaction. We confirm that we have sold as Agent
PATRIARCH PARTNERS XV LLC

| Security | Ccy | Nominal Amount | Price |
|---|---|---|---|
| Zohar CDO 2003 1 Series A 3A | USD | 297,500,000.00 | 35 |

| Security Code | Description | Account Code | Yield |
|---|---|---|---|
| 98976XAC5 | USD .ZOHAR A 3A A 3A FRN 13 Nov 201 | PATRP0002 | |

| | | | Yield Type |
|---|---|---|---|
| | | | |

| | Ccy | Amount | Exchange Rate |
|---|---|---|---|
| Gross Consideration | USD | 85,013,449.76 | |
| Accrued Interest (39 Days @ 1.635%) | USD | 436,966.95 | |
| Accrued Interest | USD | 436,966.95 | |
| | | | |
| | | | |
| Net Consideration in Trade Currency | USD | 85,450,416.71 | 1.0000000 |
| **NET SETTLEMENT CONSIDERATION** | **USD** | **85,450,416.71** | |

| SETTLEMENT DETAILS | | AGAINST PAYMENT | |
|---|---|---|---|
| DEPOT DETAILS | | NOSTRO DETAILS | |
| Our Delivery | CLEARSTREAM BKNG LUX | Your Delivery | DUMMY NOSTRO/DEPOT FOR LEGAL COMPANIES |
| Account Your Receipt | 74301 BANK OF NEW YORK | Account Our Receipt | 001 CLEARSTREAM BKNG LUX |
| Account For A/c Of | UNKNOWN PATRIARCH PARTNERS XV LLC | Account For A/c Of | 74301 |
| Additional Information | | Additional Information | |
| Exchange | | | |

000747 04FISSD1 001494

**Please ensure that you read and understand the important US regulatory wording on the next page.**



Barclays offers investment banking products and services to its clients
through Barclays Bank PLC. Barclays Bank PLC is authorised
by the Prudential Regulation Authority and regulated by the Financial
Conduct Authority and the Prudential Regulation Authority and is a
member of the London Stock Exchange. Barclays Bank PLC is registered
in England No. 1026167. Registered Office 1 Churchill Place, London E14 5HP.

BBPLC LONDON BARCAP RISK FINANCE BRANCH    Entered 11/22/15 17:13:41    Main Document Reference
43-23081-rdd    Doc 1    Filed 11/22/15    Entered 11/22/15 17:13:41    Main Document
5 THE NORTH COLONNADE, CANARY WHARF, LONDON E14 4BB UNITED KINGDOM
Pg 6 of 28
Telephone                                        Fax
BBG98916/19258017



**AGREEMENT**

AS AGREED BY CUSTOMER AND BARCLAYS CAPITAL INC. (BARCLAYS) THAT THE TRANSACTION DESCRIBED ON THE FACE HEREOF IS SUBJECT TO THE FOLLOWING TERMS AND CONDITIONS:

1. The Transaction is subject to the constitution, by–laws, rules, customs, practices and interpretation of the exchange or market (and its clearing house, if any) where executed and the clearing agency through which delivery or payment or comparison of data respecting the terms of the settlement is affected; of the Securities and Exchange Commission; of the Federal Reserve Board; of the National Association of Securities Dealers, Inc. and The Securities and Futures Authority Limited, where applicable; and of all applicable U.S. federal and state laws and regulations.

2. The time of execution of this Transaction will be furnished upon request. In transactions where Barclays acts as agent, the date, name of buyer or seller and source and amount of any remuneration received in connection with the Transaction other than from you will be furnished upon request.

3. If our capacity was as "agent", we acted as broker for the party(s) on the other side of the Transaction, which may include affiliates of Barclays (or, if indicated, as broker both for yourself and the party(s) on the other side) and not for our own account. If our capacity was as "principal", we bought from or sold to you as dealer for our own account (or, if indicated, for our joint account with another firm or for the account of an underwriting syndicate of which we are a member), and your capacity was for your own account unless you expressly specified otherwise to us in writing and gave us sufficient information (including, without limitation, all financial information requested by us) in writing prior to the transaction for us to identify and rely upon the credit of another party or your credit in another capacity.

4. Commission rates are subject to negotiation, and any commission charged you in this transaction may be more or less than the commission charged to or by others in similar transactions.

5. If (1) you or any of your affiliates (collectively, the "Customer Parties") shall (i) default in respect of this or any other transaction with Barclays or any of its affiliates (collectively, the "Barclays Affiliates"), (ii) state that any Customer Party will not perform any obligation to any Barclays  Affiliates, (iii) apply for, consent to or be the subject of any application or petition for the appointment of or the taking of possession by a receiver, custodian, trustee, liquidator or similar person of itself or of all or a substantial part of its  property or admit in writing its inability, or (iv) become generally unable to pay its debts as such debts become due, make a general assignment for the benefit of creditors, file (i) be the subject of the filing or entry of a petition or order for relief under Title 11 of the U.S. Bankruptcy Code or any similar law of any jurisdiction regarding reorganization, liquidation, dissolution, insolvency, or relief of debtors or of an application for a protective decree under Section 5 of the Securities Investor Protection Act of 1970, or of any decree under Section 5 of the Securities Investor Protection Act of 1970, or (2) if any Barclays Affiliates believes that it may not be able to apply without delay property that it or any other Barclays Affiliates is holding or expects to receive from any Customer Party against any obligations to such first Barclays Affiliate, then, in the case of either (1) or (2) each  Barclays Affiliates may (a) cancel or otherwise liquidate and exercise all available remedies under this and any other transaction between it and you without prior notice to you, and (b) set off any obligation owing by it to you against any obligations owing by you or any other Customer Party to it or any other Barclays Affiliates. Any grace or notice period required by agreement prior to exercise of such remedies may be shortened or eliminated by any Barclays Affiliate if in its sole discretion it is reasonable to do so under the circumstances. You shall be liable to each Barclays Affiliate  for all costs and expenses, including attorney's fees and expenses, incurred  in connection with the enforcement or collection by such Barclays Affiliate of its rights or claims hereunder against any Customer Party.

6. The securities in the Transaction are or may be hypothecated under circumstances which will permit the commingling thereof with securities carried for the account of other customers to the extent consistent with applicable law.

7. If this Transaction is a purchase by you and sufficient funds are not already in your account with Barclays, it is agreed that you will make the payment of the securities described promptly in accordance with the terms of this confirmation. Barclays shall not be deemed to have transferred or be required to transfer such securities to you until Barclays has received full payment, and you shall not sell such securities prior to making such payment. All confirmations and book entries purporting to evidence or effect such transfer to all such securities shall be deemed to be provisional and without effect until such full payment from Barclays. If this Transaction is a sale by you or the securities described on the face hereof are not already held in your account with Barclays and it is not marked short, then Barclays is acting upon your representation that you or your principal owns such securities, and it is agreed that you will promptly deliver such securities to Barclays. If full payment for securities sold or bought for you in this Transaction is not received by Barclays on or before the settlement date or if securities bought from or sold (except short sales) for you in this Transaction are not delivered to Barclays promptly, and in proper form you shall be deemed to be in default in respect of this Transaction.

8. You hereby grant to each Barclays Affiliate a security interest in all securities, monies or other property, and all proceeds of any of the foregoing, carried in any Barclays Affiliates Customer's account(s) with any Barclays affiliates or otherwise as collateral security for the payment of any and any obligations and liabilities of you and your affiliates to any Barclays affiliate.  You hereby irrevocably constitute and appoint each Barclays Affiliate your true and lawful agent and attorney in fact, with full power to act in your name and on your behalf, with respect to the execution of all instruments and the taking of all action necessary or desirable to effectuate the rights and remedies provided hereunder and by applicable law to any Barclays Affiliate.

9. You agree that, within 24 hours after Barclays's request, you will deliver to Barclays a sufficient amount of the securities subject to this agreement, or otherwise provide collateral of a type and in form acceptable to Barclays, so that the then current market value of the securities and other collateral then held by Barclays with respect to this transaction (a) in the case of a reverse repurchase agreement, resale or other transaction with respect to which you were required to provide Barclays collateral bears the same ratio to the then outstanding amount of your obligations under such transaction (taking into account accrued interest on the collateral and on the transaction) as the market value of such required collateral on the date of this confirmation exceeds the outstanding amount of your obligations under this transaction on the date hereof or (b) in all other cases, equals at least the amount by which the price so to pay for securities as set forth on the face of this confirmation exceeds the then current market value of such securities or by which the then current market value of securities that you are to sell exceeds the amount you are to be paid set forth on the face thereof, as the case may be.

10.At the time this transaction was executed or subsequent thereto, Barclays, Barclays Affiliates or others acting for the account of any of them may have effected transactions which stabilize or maintain the market price of the securities described on the face hereof or other securities of the same issuer at a level above which might otherwise prevail in the open market consistent with applicable law.  Such transactions may have been effected on any market where these securities are traded.  Such stabilization, if commenced, may be discontinued at any time Barclays may desire and may continue to make purchases and sales of securities of the same issue involved in this transaction (or other securities of the same issuer) for its own account or for the accounts of others, and such transactions, if made, may be discontinued at any time.  There may not have been and there may not be in the future any market in such securities other than those made by Barclays.

11.If this Transaction is described on the face hereof as "When–Issued" or "When Distributed" contract, then this contract shall be subject to the special requirements for such contracts, if any, of the market where executed. This contract shall be settled and payment thereof made at such time and place, in such manner, and by delivery of such securities and/or other property received by Barclays as such market may require or shall be cancelled if the proposal pursuant to which the securities were to be issued or distributed has been abandoned or materially changed or if the curities which are the subject to the contract have been materially changed.

12.This Agreement shall inure to the benefit of Barclays, its affiliates, and both parties acknowledge that this transaction is a "securities contract" within the meaning of section 741 of Title 11 of the United States Code, as amended.

13.This confirmation shall be deemed to have been accepted and signed by Customer if not objected by Customer or Barclays within five (5) calendar days from the trade date of this confirmation. The terms of the agreement set forth on the first confirmation of this form delivered to Customer shall be deemed to have been accepted and signed byCustomer with respect to each and every transaction in respect of which this form of confirmation is delivered, unless Customer shall have objected in writing to Barclays within five (5) calendar days from the trade date of this confirmation.

14.In the event any one or more provisions contained in this confirmation shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality or enforceability shall not affect any other provision hereof, and this confirmation shall be construed as if such invalid, illegal, or unenforceable provision had never contained herein.

15.For debt securities and preferred stock, call features may exist in addition to those described on the form of this confirmation. Securities subject to call features or other redemption features such as sinking funds, may be redeemed in whole or in part before maturity. Such occurrences, may affect yield. Please contact your financial consultant for further information. Actual yield may vary based on the prepayment rates. Total amount due on mortgage backed securities may be subject to change after settlement date due to factor changes. Additional information will be provided upon request.

16.The actual yield on asset backed securities may vary according to the rate at which the underlying receivables or other financial assets are prepaid. Additional information concerning the factors that affect yield will be furnished upon written request. 17.For zero coupon, compound interest and multiplier securities, no periodic payments of interest or principal are generally made. These securities may be callable at a price below their maturity value without prior notice by mail to the holder unless the holder has requested these securities be held in registered form. Unless specifically requested and agreed to by Barclays, securities will not be held in registered form. Additional information will be furnished upon request. 18.Any United States taxpayer that holds securities in non–registered form and is not exempt under Section 165(i) (3)(A), (B) or (C) of the Internal Revenue Code of 1986, as amended (the "Code") and the regulations thereunder will, for the purposes of United States income tax, be denied a deduction for any loss incurred with respect to the securities and will be denied capital gains treatment with respect to the securities. In connection with each trade of securities that is executed from inside the United States, the Buyer represents that  (i) it is a financial institution as defined in Section 1,165–12(c)(1)(v) of the regulations under Section 165 of the Code; (ii) it is purchasing the securities for its own account the account of a financial institution (as defined above) or the account of a tax–exempt organization under Section 501 (c) (3) of the Code; and (iii) it will comply with the requirements of Code Section 165 (i) (3) (A), (B) or (C) and the regulations thereunder with respect to holding and disposition of the securities. 19.If the phrase "Not Rated" appears on the face of this confirmation, this security is not rated by a nationally recognized statistical rating organization.  Rating information is provided on a good faith inquiry which Barclays believes to be reliable and current but its accuracy cannot be guaranteed. 20.If the phrase "Prospectus Enclosed" appears on the face of this confirmation, this sale is subject to the conditions contained in the prospectus, a copy of which is enclosed or will follow unders a separate cover.  Unless you advise us promptly, we shall assume you have received such copy. 21.On other than round lots (normally 100 shares) on all exchanges an amount has been added to price on purchase or deducted on sales unless otherwise indicated.  Information regarding such amount will be provided on request. 22.This confirmation and the transactions described herein shall be governed by the laws of the State of New York excluding its conflict of law rules.

**DISCLOSURE STATEMENT**

Barclays Capital Inc. ("Barclays") is a separate, wholly–owned non–bank subsidiary of Barclays Bank PLC, and an affiliate of its subsidiary banks. Securities sold, offered or recommended by Barclays are not deposits, are not insured by the Federal Deposit Insurance Corporation, are not guaranteed by the U.S. branches and agencies of Barclays Bank PLC and the U.S. bank affiliates of Barclays (the "U.S. Affiliates"), and are not otherwise an obligation or responsibility of such U.S. Affiliates, unless such is actually the case.

From time to time, a bank affiliated with Barclays may lend money to an issuer of securities underwritten by Barclays. The prospectus or other offering documentation provided in connection with such underwriting will disclose to the extent required by applicable law (i) the existence of any material lending relationship by any affiliate of Barclays with such an issuer and (ii) whether the proceeds of an issuance of such securities will be used by the issuer to repay any outstanding indebtedness to any Barclays affiliate. Barclays may also from time to time participate in a primary or secondary distribution in the securities purchased by you or sold to you. Further, Barclays may act at the same time as broker and investment advisor with respect to your securities transactions. You understand and agree that Barclays Capital Inc. may from time to time, obtain non–public credit information concerning you from one or more affiliates of Barclays. If you do not want us to share information with our affiliates, please notify the Compliance Department in writing at Barclays Capital Inc., 200 Park Avenue, New York, NY 10166.

In connection with the Transaction to the extent that Rule 15a–6 under the U.S. Securities Exchange Act of 1934, as amended, applies thereto), each of [Barclays Capital Securities Limited ("BCSL" or "Barclays")] [Barclays Bank PLC, acting through its London branch ("LNBR" or "Barclays")] and the Counterparty acknowledges to and agrees with the other party hereto, and to and with Barclays Capital Inc. ("BCI" or the "Agent"), that (i) BCI is an affiliate of Barclays and is acting as Barclays agent under the Transaction, (ii) BCI is not a principal or a party to the Transaction, and may transfer its rights and obligations with respect to the Transaction without prior consent of the parties, (iii) BCI shall have no responsibility, obligation or liability by way of insurance, guaranty, endorsement or otherwise in any manner with respect to the performance of either party in respect of the Transaction, and each party agrees to proceed solely against the other party, and not against BCI, to collect or recover any money or securities or other assets owed to it in connection with the Transaction; (iv) Barclays will be BCI's sole customer with respect to the Transaction contemplated hereunder, (v) neither Barclays nor BCI has made or provided any statements, opinions or representations (whether written or oral) other than the representations expressly set forth in this confirmation or the master agreement, if any, to which it relates, and (vi) Counterparty is not relying (for purposes of making any investment decision, for tax, legal or accounting purposes, or for any other reason) upon, any statements, opinions or representations (whether written or oral) of Barclays or BCI other than the representations expressly set forth in this confirmation or the master agreement, if any, to which it relates.

Counterparty represents that it owns, controls or has under management aggregate financial assets in excess of $100 million.  Counterparty acknowledges and understands that no obligations of Barclays shall be entitled to the benefit of deposit insurance and that such obligations shall not be guaranteed by any affiliate of Barclays or any governmental agency. Barclays is regulated by the Financial Conduct Authority.  Barclays Bank PLC is not a member of the Securities Investor Protection Corporation ("SIPC") or of the Federal Deposit Insurance Corporation ("FDIC").

Barclays offers investment banking products and services to its clients through Barclays Bank PLC. Barclays Bank PLC is authorised by the Prudential Regulation Authority and regulated by the Financial Conduct Authority and the Prudential Regulation Authority and is a member of the London Stock Exchange. Barclays Bank PLC is registered in England No. 1026167. Registered Office 1 Churchill Place, London E14 5HP.

Trade Reference
BBG98916/19258017

000747 04FISSD1 001495

Barclays offers investment banking products and services to its clients
through Barclays Bank PLC. Barclays Bank PLC is authorised
by the Prudential Regulation Authority and regulated by the Financial
Conduct Authority and the Prudential Regulation Authority and is a
member of the London Stock Exchange. Barclays Bank PLC is registered
in England No. 1026167. Registered Office 1 Churchill Place, London E14 5HP.

ZOHAR CDO 2003-1, LIMITED
ZOHAR CDO 2003-1, CORP.

CLASS A-3a FLOATING RATE SENIOR SECURED DELAYED DRAWDOWN NOTE DUE 2015

CUSIP # 98976X AC 5                              November 13, 2003

Certificate No. A- 3                     U.S. $ * * * * * * * * * 297,500,000.00

ZOHAR CDO 2003-1, LIMITED, an exempted company organized under the laws of the Cayman Islands (the "Issuer"), and ZOHAR CDO 2003-1, CORP., a corporation organized and existing under the laws of the State of Delaware (the "Co-Issuer" and, together with the Issuer, the "Co-Issuers"), for value received, hereby promise to pay to       SEE BELOW       or registered assigns, upon presentation and surrender of this Note (except as otherwise permitted by the Indenture referred to below), the principal sum of       SEE BELOW       (or such lesser amount as shall equal the aggregate outstanding principal amount of this Note) on the Payment Date in November, 2015 (the "Stated Maturity") except as provided below and in said Indenture.

This Note is one of a duly authorized issue of Class A-3a Floating Rate Senior Secured Delayed Drawdown Notes due 2015 (the "Class A-3a Notes") issued and to be issued under an Indenture dated as of November 13 2003, (as supplemented and otherwise modified and in effect from time to time, the "Indenture"), among the Issuer, the Co-Issuer, Zohar CDO 2003-1, LLC (the "Zohar Subsidiary"), MBIA Insurance Company (the "Credit Enhancer"), CDC Financial Products Inc., as agent for the Holders of the Class A-1 Notes (together with any successors in such capacity, the "Class A-1 Note Agent"), and U.S. Bank National Association, as trustee (together with any successor trustee as permitted under the Indenture, the "Trustee"). Capitalized terms used in this Note, but not defined herein, shall have the meanings set forth in the Indenture. Reference is hereby made to the Indenture, all indentures supplemental thereto and all agreements referred to therein (including, without limitation, the Note Purchase Agreement related hereto) for a statement of the respective rights, limitations of rights, duties and immunities thereunder of the Co-Issuers, the Zohar Subsidiary, the Credit Enhancer, the Class A-1 Note Agent, the Trustee and the Holders of the Notes and the terms upon which the Notes are, and are to be, authenticated and delivered.

The Co-Issuers promise to pay interest on the principal amount of this Note outstanding from time to time, from the Closing Date to but excluding the Stated Maturity, in arrears on each Payment Date at a rate per annum equal to the applicable Class A-3 Note Interest Rate as set forth in the Indenture, promise to pay Class A-3 Commitment Fee ("Commitment Fee") on the Aggregate Undrawn Amount of this Note on each Payment Date at a rate per annum equal to the Class A-3 Commitment Fee Rate as set forth in the Indenture, and promise to pay the other amounts stated to be payable by them pursuant to the applicable Note Purchase Agreement, all in accordance with the Priority of Payments and the other terms set forth in the Indenture. Interest and Commitment Fees accrued with respect to each Interest Period shall be computed on the basis of a 360-day year and the actual number of days elapsed in such Interest Period, and shall be determined for such Interest Period based on the outstanding principal amount of this Note at the beginning of such Interest Period and (in the case of interest) the Note Interest Rate for such Interest Period; provided that, in the case of the Interest Periods ending prior to the Initial Payment Date,

PATRIARCH PARTNERS XV LLC

TWO HUNDRED NINETY-SEVEN MILLION FIVE HUNDRED THOUSAND   DOLLARS AND   00   CENTS

THIS NOTE HAS NOT BEEN AND WILL NOT BE REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), THE SECURITIES LAWS OF ANY STATE OF THE UNITED STATES OR ANY OTHER JURISDICTION, AND MAY BE RESOLD, PLEDGED OR OTHERWISE TRANSFERRED ONLY (A)(1) TO A PERSON WHOM THE SELLER REASONABLY BELIEVES IS A "QUALIFIED INSTITUTIONAL BUYER" WITHIN THE MEANING OF RULE 144A UNDER THE SECURITIES ACT ("RULE 144A") THAT IS (I) A "QUALIFIED PURCHASER" AS DEFINED IN SECTION 2(a)51 OF THE INVESTMENT COMPANY ACT OF 1940, AS AMENDED (THE "INVESTMENT COMPANY ACT"), (II) A "KNOWLEDGEABLE EMPLOYEE" WITH RESPECT TO THE ISSUER WITHIN THE MEANING OF RULE 3c-5 UNDER THE INVESTMENT COMPANY ACT OR (III) A COMPANY BENEFICIALLY OWNED EXCLUSIVELY BY ONE OR MORE "QUALIFIED PURCHASERS" AND/OR "KNOWLEDGEABLE EMPLOYEES" WITH RESPECT TO THE ISSUER (ANY PERSON IN (I), (II) OR (III) A "QUALIFIED PURCHASER"), PURCHASING FOR ITS OWN ACCOUNT OR THE ACCOUNT OF ANOTHER QUALIFIED INSTITUTIONAL BUYER, TO WHOM NOTICE IS GIVEN, IN EACH CASE, THAT THE RESALE, PLEDGE OR OTHER TRANSFER IS BEING MADE IN RELIANCE ON THE EXEMPTION FROM SECURITIES ACT REGISTRATION PROVIDED BY RULE 144A, OR (2) TO AN "ACCREDITED INVESTOR" WITHIN THE MEANING OF RULE 50 (a) UNDER THE SECURITIES ACT THAT IS ALSO A QUALIFIED PURCHASER, (B) IN COMPLIANCE WITH THE CERTIFICATION AND OTHER REQUIREMENTS SPECIFIED IN THE INDENTURE REFERRED TO HEREIN AND (C) IN ACCORDANCE WITH ANY APPLICABLE SECURITIES LAWS OF ANY STATE OF THE UNITED STATES OR ANY OTHER JURISDICTION. NEITHER OF THE CO-ISSUERS HAS BEEN REGISTERED UNDER THE INVESTMENT COMPANY ACT. NO TRANSFER OF THIS NOTE (OR ANY INTEREST HEREIN) MAY BE MADE (AND THE TRUSTEE AND THE NOTE REGISTRAR WILL NOT RECOGNIZE ANY SUCH TRANSFER) IF SUCH TRANSFER (A) WOULD BE MADE TO A TRANSFEREE WHO IS A U.S. RESIDENT (WITHIN THE MEANING OF THE INVESTMENT COMPANY ACT) THAT IS NOT A QUALIFIED PURCHASER THAT IS A NATURAL PERSON OR A COMPANY EACH OF WHOSE BENEFICIAL OWNERS IS A QUALIFIED PURCHASER (AS SUCH TERMS ARE DEFINED IN OR UNDER THE INVESTMENT COMPANY ACT), (B) WOULD HAVE THE EFFECT OF REQUIRING EITHER OF THE CO-ISSUERS OR THE COLLATERAL TO REGISTER AS AN INVESTMENT COMPANY UNDER THE INVESTMENT COMPANY ACT, (C) WOULD BE MADE TO A TRANSFEREE WHO IS A U.S. RESIDENT THAT IS A FLOW-THROUGH INVESTMENT VEHICLE OTHER THAN A QUALIFYING INVESTMENT VEHICLE, OR (D) WOULD BE MADE TO A PERSON WHO IS OTHERWISE UNABLE TO MAKE THE ACKNOWLEDGEMENTS, REPRESENTATIONS AND AGREEMENTS REQUIRED BY THE APPLICABLE TRANSFER CERTIFICATE ATTACHED AS AN EXHIBIT TO THE INDENTURE REFERRED TO HEREIN. ACCORDINGLY, AN INVESTOR IN THIS NOTE MUST BE PREPARED TO BEAR THE ECONOMIC RISK OF THE INVESTMENT FOR AN INDEFINITE PERIOD OF TIME.

interest accrued with respect to each such Interest Period shall be computed on the basis of a 360-day year and the actual number of days elapsed in such Interest Period, and shall be determined for such Interest Period based on the increase in the outstanding principal amount of this Note at the beginning of such Interest Period and the Note Interest Rate for such Interest Period (it being understood that on the Closing Date, such increase is equal to the outstanding principal amount of this Note as of the close of business on such day).

This Note may be redeemed, in whole but not in part, in the manner and with the effect provided in the Indenture. Amounts may be borrowed, from time to time, under this Note on and after the Closing Date, in the manner and with the effect provided in the Indenture and the Note Purchase Agreement. Amounts borrowed under this Note, once repaid, cannot be reborrowed.

The principal of and interest and Commitment Fee and other amounts payable in respect of this Note and other amounts pursuant to the Note Purchase Agreement which is payable in accordance with the Priority of Payments on any Payment Date and is punctually paid or duly provided for on such Payment Date shall be paid to the Person in whose name this Note (or one or more predecessor Notes) is registered at the close of business on the Record Date with respect to such Payment Date, which Record Date shall be the fifteenth day (whether or not a Business Day) prior to such Payment Date. Any such interest and Commitment Fee not so punctually paid shall forthwith cease to be payable to the Holder on such Record Date, and will instead be payable to the Person in whose name this Note is registered at the close of business on a subsequent Record Date.

Interest will cease to accrue on this Note, or in the case of a partial repayment, on such part, from the date of repayment or Stated Maturity unless payment of principal is improperly withheld or unless Default is otherwise made with respect to such payments. To the extent lawful and enforceable, interest on any Defaulted Interest shall accrue hereon to the extent provided in Section 2.6 of the Indenture.

The obligations of the Co-Issuers under this Note, the Note Purchase Agreement and the Indenture are limited recourse obligations of the Co-Issuers payable solely from the Collateral. The payments of principal of and interest on this Note and the Commitment Fee and all other amounts due on this Note are subject to the Priority of Payments and are subordinated to the payment of certain other amounts as provided therein and in Section 13.1 of the Indenture.

The Notes are entitled to the benefits of a supplemental financial guaranty insurance policy (the "Supplemental Policy") issued by the Credit Enhancer, pursuant to which the Credit Enhancer has unconditionally guaranteed payments of Insured Payments (as defined in the Supplemental Policy) on each Payment Date, all as more fully set forth in the Indenture and subject to the terms of the Supplemental Policy.

No recourse shall be had for the payment of any amount owing in respect of this Note against any Officer, member, director, employee, securityholder or incorporator of the Co-Issuers or their respective successors or assigns for any amounts payable under this Note or the Indenture. It is understood that the foregoing shall not (i) prevent recourse to the Collateral for the sums due or to become due under any security, instrument or agreement which is part of the Collateral or (ii) constitute a waiver, release or discharge of any indebtedness or obligation evidenced by this Note or secured by the Indenture until such Collateral has been realized and the proceeds thereof applied as provided in the Indenture, whereupon any outstanding indebtedness or obligation shall be extinguished. It is further understood that the foregoing shall not limit the right of any Person to name any Zohar Obligor as a party defendant in any action or suit or in the exercise of any other remedy under this Note or the Indenture, so long as no judgment in the nature of a deficiency judgment or seeking personal liability shall be asked for or (if obtained) enforced against any such Person or entity. It is also further understood that the foregoing shall not limit the rights

of the Trustee and the Holder of this Note or the obligations of the Credit Enhancer under the Supplemental Credit Enhancement.

All reductions in the principal amount of this (or one or more predecessor Notes) effected by payments of installments of principal made on any Payment Date or Redemption Date shall be binding upon all future Holders hereof and of any Note issued upon the registration of transfer of this Note or in exchange therefor or in lieu thereof, whether or not such payment is noted on this Note.

To the extent that this Note has been paid with proceeds of the Supplemental Credit Enhancement, this Note shall continue to remain Outstanding for purposes of the Indenture until the Credit Enhancer has been paid as subrogee thereunder or reimbursed under the Supplemental Credit Enhancement Agreement, and the Credit Enhancer shall be deemed the Holder hereof, to the extent of any payments hereon made by the Credit Enhancer, in accordance with the Indenture (including, without limitation, Section 16A.3 thereof).

For the avoidance of doubt, all funds advanced by the Holder pursuant to a Notice of Borrowing (delivered pursuant to, and as defined in, the Note Purchase Agreement) received from the Trustee shall be deemed to be outstanding under this Note, regardless of whether the conditions to the related Borrowing set forth in the Note Purchase Agreement or in the Indenture were in fact satisfied, until repaid in accordance with the terms of the Indenture and this Note.

This Note is a registered Note pursuant to Section 2.4 of the Indenture and is subject to certain transfer restrictions and conditions as provided therein. Title to this Note shall pass solely by registration in the Note Register kept by the Note Registrar. The Co-Issuers, the Trustee, the Collateral Manager, the Class A-1 Note Agent, the Credit Enhancer and any agent of any of them may treat the Person in whose name this Note is registered as the owner of such Note on the Note Register on the applicable Record Date for the purpose of receiving payments of principal of and interest on this Note and the Commitment Fee and for all other purposes whatsoever (whether or not this Note is overdue), subject to the Indenture (including, without limitation, Section 2.7 thereof).

Amounts payable hereunder shall be paid to the Person in whose name this Note (or one or more predecessor Notes) is registered in the Note Register at the close of business on the applicable Record Date for such payment, subject to the Indenture (including, without limitation, Section 2.6(f) thereof). Payments hereunder shall be made by wire transfer in immediately available funds to a Dollar account maintained by the Holders in accordance with wire transfer instructions received by any Paying Agent on or before the applicable Record Date or, if no wire transfer instructions are received by a Paying Agent, by a Dollar check drawn on a bank in the United States in accordance with the Indenture.

As a condition to the payment of any amount hereunder without the imposition of withholding tax, the applicable Paying Agent shall require certification acceptable to it to enable the Co-Issuers, the Trustee, the Credit Enhancer and such Paying Agent to determine their duties and liabilities with respect to any taxes or other charges that they may be required to pay, deduct or withhold in respect of this Note or the Holder hereof under any present or future law or regulation of the Cayman Islands or the United States or any present or future law or regulation of any political subdivision thereof or taxing authority therein or to comply with any reporting or other requirements under any such law or regulation.

Unless the certificate of authentication hereon has been executed by the Trustee or by the Authenticating Agent by the manual signature of one of their Authorized Officers, this Note shall not be entitled to any benefit under the Indenture or be valid or obligatory for any purpose.

If an Event of Default shall occur and be continuing, the Notes may become or be declared due and payable in the manner and with the effect provided in the Indenture.

THIS NOTE SHALL BE CONSTRUED IN ACCORDANCE WITH, AND GOVERNED BY, THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO AGREEMENTS MADE AND TO BE PERFORMED THEREIN WITHOUT REGARD TO THE CONFLICT OF LAWS OR CHOICE OF LAW PRINCIPLES THEREOF.

IN WITNESS WHEREOF, the Co-Issuers have caused this Note to be duly executed, as at 3 July 2015

ZOHAR CDO 2003-1, LIMITED

By: _____
Name:   Christopher Watler
Title:    Director


ZOHAR CDO 2003-1, CORP.

By: _____
Name:   Donald J. Puglisi
Title:    President

CERTIFICATE OF AUTHENTICATION

This is one of the Class A-3a Floating Rate Senior Secured Delayed Drawdown Notes referred to in the within-mentioned Indenture.

5/20/15

U.S. BANK NATIONAL ASSOCIATION,
as Trustee

By: _____
Authorized Signatory

ASSIGNMENT FORM

For value received_____

hereby sells, assigns and transfers unto

_____

_____
Please insert social security or
other identifying number of assignee

Please print or type name and address,
including zip code. of assignee:

_____

_____

_____

_____

the within Note and does hereby irrevocably constitute and appoint _____ Attorney to
transfer the Note on the books of the Co-Issuers with full power of substitution in the premises.

Date:_____          Your Signature:_____
                                              (Sign exactly as your name
                                              appears on the Note)

6.  Permanent Address (if different than above):

7.  U.S. Taxpayer Identification or Social Security Number (if any):   20-3784122

8.  Payment Instructions:   *Patriarch Partners XV LLC*
                            *BB&T Bank*
                            *Routing #: 053101121*
                            *Account #: 5294558642*

9.  Instructions for delivery of Notes:   *Patriarch Partners XV LLC*
                                          *c/o Chief Compliance Officer*
                                          *One Broadway, 5th Floor*
                                          *NY, NY 10004*

B.  **Status**

1.  The Transferee is (i) a "qualified institutional buyer" (within the meaning of Rule 144A ("Rule 144A") under the U.S. Securities Act of 1933, as amended (the "Securities Act")) (a "Qualified Institutional Buyer") and is acquiring such Notes for its own account or for the account of another Qualified Institutional Buyer to whom notice has been given that the transfer is being made in reliance on Rule 144A, or (ii) an "accredited investor" within the meaning of Rule 501(a) under the Securities Act and, in the case of (i) or (ii), is (I) a "Qualified Purchaser" as defined in Section 2(a)(51) of the Investment Company Act of 1940, as amended (the "Investment Company Act"), (II) a "Knowledgeable Employee" with respect to the Issuer within the meaning of Rule 3c-5 under the Investment Company Act or (III) a company beneficially owned exclusively by one or more "Qualified Purchasers" and/or "Knowledgeable Employees" with respect to the Issuer (any person in (I), (II) or (III), a "Qualified Purchaser").

2.  The Transferee agrees that, prior to any sale or other transfer by it of any of the Notes, it will obtain from the subsequent transferee and deliver to the Note Registrar a duly executed transferee certificate substantially in the form attached as an exhibit to the Indenture and such other certificates and other information as the Co-Issuers, the Collateral Manager or the Trustee may reasonably require to confirm that the proposed transfer complies with the restrictions in the legend placed on such Notes and in the Indenture.

3.  The Transferee understands that the Notes are being offered only in a transaction not involving any public offering in the United States within the meaning of the Securities Act, the Notes have not been and will not be registered under the Securities Act, and, if in the future the Transferee decides to offer,

Telephone                    Fax

| | Trade Reference |
|---|---|
| | BBG98921/19257943 |

| Trade Date | Trade Time |
|---|---|
| 26 MAR 2015 | 16:24 |

| Value Date |
|---|
| 31 MAR 2015 |

| Transaction Type |
|---|
| TRADE |

000748 04FISSD1
PATRIARCH PARTNERS XV LLC
FLOOR 5, 1 BROADWAY
NEW YORK
NY 10004-1490
NEW YORK
USA



\*\*\* COPY \*\*\* \*\*\* AMENDMENT \*\*\*
Barclays Capital Inc. acted as agent on behalf of Barclays Bank PLC
in respect of this transaction. We confirm that we have sold as Agent
PATRIARCH PARTNERS XV LLC

| Security | Ccy | Nominal Amount | Price |
|---|---|---|---|
| Zohar CDO 2003 1 Series A 3B | USD | 52,500,000.00 | 35 |

| Security Code | Description | Account Code | Yield |
|---|---|---|---|
| 98976XAD3 | USD .ZOHAR A 3B A 3B FRN 13 Nov 201 | PATRP0002 | |

| | | | Yield Type |
|---|---|---|---|
| | | | |

| | Ccy | Amount | Exchange Rate |
|---|---|---|---|
| Gross Consideration | USD | 18,375,000.00 | |
| Accrued Interest (999 Days @ 4.111%) | USD | 94,446.63 | |
| Accrued Interest | USD | 94,446.63 | |
| | | | |
| | | | |
| Net Consideration in Trade Currency | USD | 18,469,446.63 | 1.0000000 |

**NET SETTLEMENT CONSIDERATION** | **USD** | **18,469,446.63** |

| SETTLEMENT DETAILS | | AGAINST PAYMENT | |
|---|---|---|---|
| DEPOT DETAILS | | NOSTRO DETAILS | |
| Our Delivery | CLEARSTREAM BKNG LUX | Your Delivery | DUMMY NOSTRO/DEPOT FOR LEGAL COMPANIES |
| Account | 74301 | Account | 001 |
| Your Receipt | BANK OF NEW YORK | Our Receipt | CLEARSTREAM BKNG LUX |
| Account | UNKNOWN | Account | 74301 |
| For A/c Of | PATRIARCH PARTNERS XV LLC | For A/c Of | |
| Additional Information | | Additional Information | |
| Exchange | | | |

000748 04FISSD1 001496

**Please ensure that you read and understand the important US regulatory wording on the next page.**



Barclays offers investment banking products and services to its clients
through Barclays Bank PLC. Barclays Bank PLC is authorised
by the Prudential Regulation Authority and regulated by the Financial
Conduct Authority and the Prudential Regulation Authority and is a
member of the London Stock Exchange. Barclays Bank PLC is registered
in England No. 1026167. Registered Office 1 Churchill Place, London E14 5HP.

**AGREEMENT**

AS AGREED BY CUSTOMER AND BARCLAYS CAPITAL INC. (BARCLAYS) THAT THE TRANSACTION
DESCRIBED ON THE FACE HEREOF IS SUBJECT TO THE FOLLOWING TERMS AND CONDITIONS:

1. The Transaction is subject to the constitution, by-laws, rules, customs, practices and interpretation of the exchange or market (and its clearing house, if any) where executed and the clearing agency through which delivery or payment or comparison of data respecting the terms of the settlement is affected; of the Securities and Exchange Commission: of the Federal Reserve Board; of the National Association of Securities Dealers, Inc. and The Securities and Futures Authority Limited, where applicable; and of all applicable U.S. federal and state laws and regulations.

2. The time of execution of this Transaction will be furnished upon request. In transactions where Barclays acts as agent, the date, name of buyer or seller and source and amount of any remuneration received in connection with the Transaction other than from you will be furnished upon request.

3. If our capacity was an "agent", we acted as broker for the party(s) on the other side of the Transaction, which may include affiliates of Barclays (or, if indicated, as broker both for yourself and the party(s) on the other side) and not for our own account. If our capacity was as "principal", we bought from or sold to you as dealer for our own account (or, if indicated, for our joint account with another firm or for the account of an underwriting syndicate of which we are a member), and your capacity was for your own account unless you expressly stated otherwise to us in writing and gave us sufficient information (including, without limitation, all financial information requested by us) in writing prior to the transaction for us to identify and rely upon the credit of another party or your credit in another capacity.

4. Commission rates are subject to change and any commission charged you in this transaction may be more or less than the commission charged to or by others in similar transactions.

5. If (1) you or any of your affiliates (collectively, the "Customer Parties") shall (i) default in respect of this or any other transaction with Barclays or any of its affiliates (collectively, the "Barclays Affiliates"), (ii) state that any Customer Party will not perform any obligation to any Barclays Affiliates, (iii) apply for, consent to or be the subject of any application or petition for the appointment of or the taking of possession by a receiver, custodian, trustee, liquidator or similar person or itself or of all or a substantial part of its property or admit in writing its inability, or (iv) become generally unable to pay its debts as such debts become due, make a general assignment for the benefit of creditors, file or be the subject of the filing or entry of a petition or order for relief under Title 11 of the U.S. Bankruptcy Code or any similar law of any jurisdiction regarding reorganization, liquidation, dissolution, insolvency, or relief of debtors or of an application for a protective decree under Section 5 of the Securities Investor Protection Act of 1970, or of any decree under Section 5 of the Securities Investor Protection Act of 1970, or (2) if any Barclays Affiliates believes that it may not be able to apply without delay property that it or any other Barclays Affiliates is holding or expects to receive from any Customer Party against any obligations to such first Barclays Affiliates, then, in the case of either (1) or (2) each  Barclays Affiliates may (a) cancel or otherwise liquidate and exercise all available remedies under this and any other transaction between it and you without prior notice to you, and (b) set off any obligation owing by it to you against any obligations owing by you or any other Customer Party to it or any other Barclays Affiliates. Any grace or notice period required by agreement prior to exercise of such remedies may be dismissed or eliminated by any Barclays Affiliate if in its sole discretion it is reasonable to do so under the circumstances. You shall be liable to each Barclays Affiliate  for all costs and expenses, including attorney's fees and expenses, incurred  in connection with the enforcement or collection by such Barclays Affiliate of its rights or claims hereunder against any Customer Party.

6. The securities in the Transaction are or may be hypothecated under circumstances which will permit the commingling thereof with securities carried for the account of other customers to the extent consistent with applicable law.

7. If this Transaction is a purchase by you and sufficient funds are not already in your account with Barclays, it is agreed that you will make the payment of the securities described promptly in accordance with the terms of this confirmation. Barclays shall not be deemed to have transferred or be required to transfer such securities to you until Barclays has received full payment, and you shall not sell such securities prior to making such payment. All confirmations and book entries purporting to evidence or effect such transfer to all such securities shall be deemed to be provisional and without effect until such full payment thereof has been received by Barclays. If this Transaction is a sale by you or the securities described on the face hereof are not already held in your account with Barclays and it is not marked short, then Barclays is acting upon your representation that you or your principal owns such securities, and it is agreed that you will promptly deliver such securities to Barclays. If full payment for securities sold to or bought for you in this Transaction is not received by Barclays on or before the settlement date or if securities bought from or sold (except short sales) for you in this Transaction are not delivered to Barclays promptly, and in proper form you shall be deemed to be in default in respect of this Transaction.

8. You hereby grant to each Barclays Affiliate a security interest in all securities, monies or other property, and all proceeds of any of the foregoing, carried in any Barclays Affiliates Customer's account(s) with any Barclays affiliates or otherwise as collateral security for the payment of any and any obligations and liabilities of you and your affiliates to any Barclays affiliate.  You hereby irrevocably constitute and appoint each Barclays Affiliate your true and lawful agent and attorney in fact, with full power to act in your name and on your behalf, with respect to the execution of all instruments and the taking of all action necessary or desirable to effectuate the rights and remedies provided hereunder and by applicable law to any Barclays Affiliate.

9. You agree that, within 24 hours after Barclays's request, you will deliver to Barclays a sufficient amount of the securities subject to this agreement, or otherwise provide collateral of a type and in form acceptable to Barclays, so that the then current market value of the securities and other collateral then held by Barclays with respect to this transaction (a) in the case of a reverse repurchase agreement, resale or other transaction with respect to which you were required to provide Barclays collateral bears the same ratio to the then outstanding amount of your obligations under such transaction (taking into account accrued interest on the collateral and on the transaction) as the market value of such required collateral on the date of this confirmation exceeds the outstanding amount of your obligations under this transaction on the date hereof or (b) in all other cases, equals at least the amount by which the price you are to pay for securities as set forth on the face of this confirmation exceeds the then current market value of such securities or by which the then current market value of securities that you are to sell exceeds the amount you are to be paid set forth on the face thereof, as the case may be.

10. At the time this transaction was executed or subsequent thereto, Barclays, Barclays Affiliates or others acting for the account of any of them may have effected transactions which stabilize or maintain the market price of the securities described on the face hereof or other securities of the same issuer at a level above which might otherwise prevail in the open market consistent with applicable law.  Such transactions may have been effected on any market where these securities are traded.  Such stabilization, if commenced, may be discontinued at any time Barclays may desire and may continue to make purchases and sales of securities of the same issue involved in this transaction (or other securities of the same issue) for its own account or for the accounts of others, and such transactions, if made, may be discontinued at any time.  There may not have been and there may not be in the future any market in such securities other than those made by Barclays.

11. If this Transaction is described on the face hereof as "When-Issued" or "When Distributed" contract, then this contract shall be subject to the special requirements for such contracts, if any, of the market where executed.  This contract shall be settled and payment thereof made at such time and place, in such manner, and by delivery of such securities and/or other property received by Barclays as such market may require or shall be cancelled if the proposal pursuant to which the securities were to be issued or distributed has been abandoned or materially changed or if the entities which are the subject to the contract have been materially changed.

12. This Agreement shall inure to the benefit of Barclays, its affiliates, and both parties acknowledge that this transaction is a "securities contract" within the meaning of section 741 of Title 11 of the United States Code, as amended.

13. This confirmation shall be deemed to have been accepted and signed by Customer if not objected by Customer or Barclays within five (5) calendar days from the trade date of this confirmation. The terms of the agreement set forth on the first confirmation of this form delivered to Customer shall be deemed to have been accepted and signed by Customer with respect to each and every transaction in respect of which this form of confirmation is delivered, unless Customer has objected in writing to Barclays within five (5) calendar days from the trade date of this confirmation.

14. In the event any one or more provisions contained in this confirmation shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality or enforceability shall not affect any other provision hereof, and this confirmation shall be construed as if such invalid, illegal, or unenforceable provision had never contained herein.

15. For debt securities and preferred stock, call features may exist in addition to those described on the form of this confirmation. Securities subject to call features or other redemption features such as sinking funds, may be redeemed in whole or in part before maturity. Such occurrences, may affect yield. Please contact your financial consultant for further information. Actual yield may vary based on the prepayment rates. Total amount due on mortgage backed securities may be subject to change after settlement date due to factor changes. Additional information will be provided upon request.

16. The actual yield on asset backed securities may vary according to the rate at which the underlying receivables or other financial assets are prepaid. Information concerning the factors that affect yield will be furnished upon written request.

17. For zero coupon, compound interest and multiplier securities, no periodic payments of interest or principal are generally made. These securities may be callable at a price below their maturity value without prior notice by mail to the holder unless the holder has requested these securities be held in registered form. Unless specifically requested and agreed to by Barclays, securities will not be held in registered form. Additional information will be furnished upon request.

18. Any United States taxpayer that holds securities in non–registered form and is not exempt under Section 165(j) (3)(A), (B) or (C) of the Internal Revenue Code of 1986, as amended (the "Code") and the regulations thereunder will, for the purposes of United States income tax, be denied a deduction for any loss incurred with respect to the security and will be denied capital gains treatment with respect to the sale of securities in bearer form inside the United States, the Buyer represents that: (i) it is a financial institution as defined in Section 1.165–12(c)(1)(v) of the regulations under Section 165 of the Code; (ii) it is purchasing the securities for its own account the account of a financial institution (as defined above) or the account of a tax–exempt organization under Section 501 (c) (3) of the Code; and (iii) it will comply with the requirements of Code Section 165 (j) (3) (A), (B) or (C) and the regulations thereunder with respect to holding and disposition of the securities.

19. If the phrase "Not Rated" appears on the face of this confirmation, this security is not rated by a nationally recognized statistical rating organization.  Rating information is provided on a good faith inquiry which Barclays believes to be reliable and current but its accuracy cannot be guaranteed.

20. If the phrase "Prospectus Enclosed" appears on the face of this confirmation, this sale is subject to the conditions contained in the prospectus, a copy of which is enclosed or will follow under a separate cover.  Unless you advise us promptly, we shall assume you have received such copy.

21. On other than round lots (normally 100 shares) on all exchanges an amount has been added to price on purchase or deducted on sales unless otherwise indicated.  Information regarding such amount will be provided on request.

22. This confirmation and the transactions described herein shall be governed by the laws of the State of New York excluding its conflict of law rules.

**DISCLOSURE STATEMENT**

Barclays Capital Inc. ("Barclays") is a separate, wholly–owned non–bank subsidiary of Barclays Bank PLC and an affiliate of its subsidiary banks. Securities sold, offered or recommended by Barclays are not deposits, are not insured by the Federal Deposit Insurance Corporation, are not guaranteed by the U.S. branches and agencies of Barclays Bank PLC and the U.S. bank affiliates of Barclays (the "U.S. Affiliates"), and are not otherwise an obligation or responsibility of such U.S. Affiliates, unless such is actually the case.

From time to time, a bank affiliated with Barclays may lend money to an issuer of securities underwritten by Barclays. The prospectus or other offering documentation provided in connection with such underwriting will disclose to the extent required by applicable law (i) the existence of any material lending relationship by any affiliate of Barclays with such an issuer and (ii) whether the proceeds of an issuance of such securities will be used by the issuer to repay any outstanding indebtedness to any Barclays affiliate. Barclays may also from time to time participate in a primary or secondary distribution in the securities purchased by you or sold to you. Further, Barclays may at the same time as broker and investment advisor with respect to your securities transactions. You understand and agree that Barclays Capital Inc. may from time to time, obtain non–public credit information concerning you from one or more affiliates of Barclays. If you do not want us to share information with our affiliates, please notify the Compliance Department in writing at Barclays Capital Inc., 200 Park Avenue, New York, NY 10166.

In connection with the Transaction to the extent that Rule 15a–6 under the U.S. Securities Exchange Act of 1934, as amended, applies thereto), each of [Barclays Capital Securities Limited ("BCSL" or "Barclays")] [Barclays Bank PLC, including its London branch ("LNBR" or "Barclays")] and the Counterparty acknowledges to and agrees with the other party hereto, and to and with Barclays Capital Inc. ("BCI" or the "Agent"), that (i) BCI is an affiliate of Barclays and is acting as Barclays agent under the Transaction, (ii) BCI is not a principal or a party to the Transaction, and may transfer its rights and obligations with respect to the Transaction without prior consent of the parties, (iii) BCI shall have no responsibility, obligation or liability by way of issuance, guaranty, endorsement or otherwise in any manner with respect to the performance of either party in respect of the Transaction, and each party agrees to proceed solely against the other party, and not against BCI, to collect or recover any money or securities or other assets owed to it in connection with the Transaction, (iv) Barclays will be acting for its own account in respect of this confirmation and the Transaction contemplated hereunder, (v) neither Barclays nor BCI has made or provided any statements, opinions or representations (whether written or oral) other than the representations expressly set forth in this confirmation or the master agreement, if any, to which it relates, and (vi) Counterparty is not relying (for purposes of making any investment decision, for tax, legal or accounting purposes, or for any other reason) upon, any statements, opinions or representations (whether written or oral) of Barclays or BCI other than the representations expressly set forth in this confirmation or the master agreement, if any, to which it relates.

Counterparty represents that it owns, controls or has under management aggregate financial assets in excess of $100 million.  Counterparty acknowledges and understands that no obligations of Barclays shall be entitled to the benefit of deposit insurance and that such obligations shall not be guaranteed by any affiliate of Barclays or any governmental agency. Barclays is regulated by the Financial Conduct Authority.  Barclays Bank PLC is not a member of the Securities Investor Protection Corporation ("SIPC") or of the Federal Deposit Insurance Corporation ("FDIC").

Barclays offers investment banking products and services to its clients
through Barclays Bank PLC. Barclays Bank PLC is authorised
by the Prudential Regulation Authority and regulated by the Financial
Conduct Authority and the Prudential Regulation Authority and is a
member of the London Stock Exchange. Barclays Bank PLC is registered
in England No. 1026167. Registered Office 1 Churchill Place, London E14 5HP.

**BBPLC15-09891** **LONDON BARCAP RISK FINANCE BRANCH** **TN No: 19257943** **Entered 11/22/15 17:13:41** **Main Document**

**Page 19 of 28**

Trade Reference
BBG98921/19257943

000748 04FISSD1 001497

Barclays offers investment banking products and services to its clients
through Barclays Bank PLC. Barclays Bank PLC is authorised
by the Prudential Regulation Authority and regulated by the Financial
Conduct Authority and the Prudential Regulation Authority and is a
member of the London Stock Exchange. Barclays Bank PLC is registered
in England No. 1026167. Registered Office 1 Churchill Place, London E14 5HP.



A3B_3                              98976XAD3                         USBSFS #4936

## ZOHAR CDO 2003-1, LIMITED
## ZOHAR CDO 2003-1, CORP.

### CLASS A-3b FLOATING RATE SENIOR SECURED DELAYED DRAWDOWN NOTE DUE 2015

CUSIP # 98976X AD 3                                    November 13, 2003

Certificate No. A- 3                             U.S. $ **********52,500,000.00

ZOHAR CDO 2003-1, LIMITED, an exempted company organized under the laws of the Cayman Islands (the "Issuer"), and ZOHAR CDO 2003-1, CORP., a corporation organized and existing under the laws of the State of Delaware (the "Co-Issuer" and, together with the Issuer, the "Co-Issuers"), for value received, hereby promise to pay to      SEE BELOW      or registered assigns, upon presentation and surrender of this Note (except as otherwise permitted by the Indenture referred to below), the principal sum of                     SEE BELOW
(or such lesser amount as shall equal the aggregate outstanding principal amount of this Note) on the Payment Date in November, 2015 (the "Stated Maturity") except as provided below and in said Indenture.

This Note is one of a duly authorized issue of Class A-3b Floating Rate Senior Secured Delayed Drawdown Notes due 2015 (the "Class A-3b Notes") issued and to be issued under an Indenture dated as of November 13, 2003, (as supplemented and otherwise modified and in effect from time to time, the "Indenture"), among the Issuer, the Co-Issuer, Zohar CDO 2003-1, LLC (the "Zohar Subsidiary"), MBIA Insurance Company (the "Credit Enhancer"), CDC Financial Products Inc., as agent for the Holders of the Class A-1 Notes (together with any successors in such capacity, the "Class A-1 Note Agent"), and U.S. Bank National Association, as trustee (together with any successor trustee as permitted under the Indenture, the "Trustee"). Capitalized terms used in this Note, but not defined herein, shall have the meanings set forth in the Indenture. Reference is hereby made to the Indenture, all indentures supplemental thereto and all agreements referred to therein (including, without limitation, the Note Purchase Agreement related hereto) for a statement of the respective rights, limitations of rights, duties and immunities thereunder of the Co-Issuers, the Zohar Subsidiary, the Credit Enhancer, the Class A-1 Note Agent, the Trustee and the Holders of the Notes and the terms upon which the Notes are, and are to be, authenticated and delivered.

The Co-Issuers promise to pay interest on the principal amount of this Note outstanding from time to time, from the Closing Date to but excluding the Stated Maturity, in arrears on each Payment Date at a rate per annum equal to the applicable Class A-3 Note Interest Rate as set forth in the Indenture, promise to pay Class A-3 Commitment Fee ("Commitment Fee") on the Aggregate Undrawn Amount of this Note on each Payment Date at a rate per annum equal to the Class A-3 Commitment Fee Rate as set forth in the Indenture, and promise to pay the other amounts stated to be payable by them pursuant to the applicable Note Purchase Agreement, all in accordance with the Priority of Payments and the other terms set forth in the Indenture. Interest and Commitment Fees accrued with respect to each Interest Period shall be computed on the basis of a 360-day year and the actual number of days elapsed in such Interest Period, and shall be determined for such Interest Period based on the outstanding principal amount of this Note at the beginning of such Interest Period and (in the case of interest) the Note Interest Rate for such Interest Period; provided that, in the case of the Interest Periods ending prior to the Initial Payment Date, interest accrued with respect to each such Interest Period shall be computed on the basis of a 360-day year

PATRIARCH PARTNERS XV LLC

\`********FIFTY-TWO MILLION FIVE HUNDRED THOUSAND  DOLLARS AND  00  CENTS

THIS NOTE HAS NOT BEEN AND WILL NOT BE REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), THE SECURITIES LAWS OF ANY STATE OF THE UNITED STATES OR ANY OTHER JURISDICTION, AND MAY BE RESOLD, PLEDGED OR OTHERWISE TRANSFERRED ONLY (A)(1) TO A PERSON WHOM THE SELLER REASONABLY BELIEVES IS A "QUALIFIED INSTITUTIONAL BUYER" WITHIN THE MEANING OF RULE 144A UNDER THE SECURITIES ACT ("RULE 144A") THAT IS (I) A "QUALIFIED PURCHASER" AS DEFINED IN SECTION 2(a)51 OF THE INVESTMENT COMPANY ACT OF 1940, AS AMENDED (THE "INVESTMENT COMPANY ACT"), (II) A "KNOWLEDGEABLE EMPLOYEE" WITH RESPECT TO THE ISSUER WITHIN THE MEANING OF RULE 3c-5 UNDER THE INVESTMENT COMPANY ACT OR (III) A COMPANY BENEFICIALLY OWNED EXCLUSIVELY BY ONE OR MORE "QUALIFIED PURCHASERS" AND/OR "KNOWLEDGEABLE EMPLOYEES" WITH RESPECT TO THE ISSUER (ANY PERSON IN (I), (II) OR (III) A "QUALIFIED PURCHASER"), PURCHASING FOR ITS OWN ACCOUNT OR THE ACCOUNT OF ANOTHER QUALIFIED INSTITUTIONAL BUYER, TO WHOM NOTICE IS GIVEN, IN EACH CASE, THAT THE RESALE, PLEDGE OR OTHER TRANSFER IS BEING MADE IN RELIANCE ON THE EXEMPTION FROM SECURITIES ACT REGISTRATION PROVIDED BY RULE 144A, OR (2) TO AN "ACCREDITED INVESTOR" WITHIN THE MEANING OF RULE 501(a) UNDER THE SECURITIES ACT THAT IS ALSO A QUALIFIED PURCHASER, (B) IN COMPLIANCE WITH THE CERTIFICATION AND OTHER REQUIREMENTS SPECIFIED IN THE INDENTURE REFERRED TO HEREIN AND (C) IN ACCORDANCE WITH ANY APPLICABLE SECURITIES LAWS OF ANY STATE OF THE UNITED STATES OR ANY OTHER JURISDICTION. NEITHER OF THE CO-ISSUERS HAS BEEN REGISTERED UNDER THE INVESTMENT COMPANY ACT. NO TRANSFER OF THIS NOTE (OR ANY INTEREST HEREIN) MAY BE MADE (AND THE TRUSTEE AND THE NOTE REGISTRAR WILL NOT RECOGNIZE ANY SUCH TRANSFER) IF SUCH TRANSFER (A) WOULD BE MADE TO A TRANSFEREE WHO IS A U.S. RESIDENT (WITHIN THE MEANING OF THE INVESTMENT COMPANY ACT) THAT IS NOT A QUALIFIED PURCHASER THAT IS A NATURAL PERSON OR A COMPANY EACH OF WHOSE BENEFICIAL OWNERS IS A QUALIFIED PURCHASER (AS SUCH TERMS ARE DEFINED IN OR UNDER THE INVESTMENT COMPANY ACT), (B) WOULD HAVE THE EFFECT OF REQUIRING EITHER OF THE CO-ISSUERS OR THE COLLATERAL TO REGISTER AS AN INVESTMENT COMPANY UNDER THE INVESTMENT COMPANY ACT, (C) WOULD BE MADE TO A TRANSFEREE WHO IS A U.S. RESIDENT THAT IS A FLOW-THROUGH INVESTMENT VEHICLE OTHER THAN A QUALIFYING INVESTMENT VEHICLE, OR (D) WOULD BE MADE TO A PERSON WHO IS OTHERWISE UNABLE TO MAKE THE ACKNOWLEDGEMENTS, REPRESENTATIONS AND AGREEMENTS REQUIRED BY THE APPLICABLE TRANSFER CERTIFICATE ATTACHED AS AN EXHIBIT TO THE INDENTURE REFERRED TO HEREIN. ACCORDINGLY, AN INVESTOR IN THIS NOTE MUST BE PREPARED TO BEAR THE ECONOMIC RISK OF THE INVESTMENT FOR AN INDEFINITE PERIOD OF TIME.

and the actual number of days elapsed in such Interest Period, and shall be determined for such Interest Period based on the increase in the outstanding principal amount of this Note at the beginning of such Interest Period and the Note Interest Rate for such Interest Period (it being understood that on the Closing Date, such increase is equal to the outstanding principal amount of this Note as of the close of business on such day)

The Class A-3b Note may be redeemed, in whole but not in part, in the manner and with the effect provided in the Indenture. Amounts may be borrowed, from time to time, under this Class A-3b Note on and after the Closing Date, in the manner and with the effect provided in the Indenture and the Note Purchase Agreement. Amounts borrowed under this Note, once repaid, cannot be reborrowed.

The principal of and interest and Commitment Fee and other amounts payable in respect of this Note pursuant to the Note Purchase Agreement which is payable in accordance with the Priority of Payments on any Payment Date and is punctually paid or duly provided for on such Payment Date shall be paid to the Person in whose name this Note (or one or more predecessor Notes) is registered at the close of business on the Record Date with respect to such Payment Date, which Record Date shall be the fifteenth day (whether or not a Business Day) prior to such Payment Date. Any such interest and the Commitment Fee not so punctually paid shall forthwith cease to be payable to the Holder on such Record Date, and will instead be payable to the Person in whose name this Note is registered at the close of business on a subsequent Record Date.

Interest will cease to accrue on this Note, or in the case of a partial repayment, on such part, from the date of repayment or Stated Maturity unless payment of principal is improperly withheld or unless Default is otherwise made with respect to such payments. To the extent lawful and enforceable, interest on any Defaulted Interest shall accrue hereon to the extent provided in Section 2.6 of the Indenture.

Payments of principal of and interest on this Note and the Class A-3 Commitment Fee with respect to this Note are subordinated to the payments on each Payment Date of principal of, interest on and Class A-3 Commitment Fee in respect of the Class A-3a Notes in accordance with Section 11.7 of the Indenture.

The obligations of the Co-Issuers under this Note, the Note Purchase Agreement and the Indenture are limited recourse obligations of the Co-Issuers payable solely from the Collateral. The payments of principal of and interest on this Note and the Commitment Fee and all other amounts due on this Note are subject to the Priority of Payments and are subordinated to the payment of certain other amounts as provided therein and in Section 13.1 of the Indenture.

The Notes are entitled to the benefits of a supplemental financial guaranty insurance policy (the "Supplemental Policy") issued by the Credit Enhancer, pursuant to which the Credit Enhancer has unconditionally guaranteed payments of Insured Payments (as defined in the Supplemental Policy) on each Payment Date, all as more fully set forth in the Indenture and subject to the terms of the Supplemental Policy.

No recourse shall be had for the payment of any amount owing in respect of this Note against any Officer, member, director, employee, securityholder or incorporator of the Co-Issuers or their respective successors or assigns for any amounts payable under this Note or the Indenture. It is understood that the foregoing shall not (i) prevent recourse to the Collateral for the sums due or to become due under any security, instrument or agreement which is part of the Collateral or (ii) constitute a waiver, release or discharge of any indebtedness or obligation evidenced by this Note or secured by the Indenture until such Collateral has been realized and the proceeds thereof applied as provided in the Indenture, whereupon any outstanding indebtedness or obligation shall be extinguished. It is further understood that the foregoing

shall not limit the right of any Person to name any Zohar Obligor as a party defendant in any action or suit or in the exercise of any other remedy under this Note or the Indenture, so long as no judgment in the nature of a deficiency judgment or seeking personal liability shall be asked for or (if obtained) enforced against any such Person or entity. It is also further understood that the foregoing shall not limit the rights of the Trustee and the Holder of this Note or the obligations of the Credit Enhancer under the Supplemental Credit Enhancement.

All reductions in the principal amount of this (or one or more predecessor Notes) effected by payments of installments of principal made on any Payment Date or Redemption Date shall be binding upon all future Holders hereof and of any Note issued upon the registration of transfer of this Note or in exchange therefor or in lieu thereof, whether or not such payment is noted on this Note.

To the extent that this Note has been paid with proceeds of the Supplemental Credit Enhancement, this Note shall continue to remain Outstanding for purposes of the Indenture until the Credit Enhancer has been paid as subrogee thereunder or reimbursed under the Supplemental Credit Enhancement Agreement, and the Credit Enhancer shall be deemed the Holder hereof, to the extent of any payments hereon made by the Credit Enhancer, in accordance with the Indenture (including, without limitation, Section 16A.3 thereof).

For the avoidance of doubt, all funds advanced by the Holder pursuant to a Notice of Borrowing (delivered pursuant to, and as defined in, the Note Purchase Agreement) received from the Trustee shall be deemed to be outstanding under this Note, regardless of whether the conditions to the related Borrowing set forth in the Note Purchase Agreement or in the Indenture were in fact satisfied, until repaid in accordance with the terms of the Indenture and this Note.

This Note is a registered Note pursuant to Section 2.4 of the Indenture and is subject to certain transfer restrictions and conditions as provided therein. Title to this Note shall pass solely by registration in the Note Register kept by the Note Registrar. The Co-Issuers, the Trustee, the Collateral Manager, the Class A-1 Note Agent, the Credit Enhancer and any agent of any of them may treat the Person in whose name this Note is registered as the owner of such Note on the Note Register on the applicable Record Date for the purpose of receiving payments of principal of and interest on this Note and Commitment Fee and for all other purposes whatsoever (whether or not this Note is overdue), subject to the Indenture (including, without limitation, Section 2.7 thereof).

Amounts payable hereunder shall be (subject to the subrogation rights of the Credit Enhancer in connection with the Supplemental Credit Enhancement) paid to the Person in whose name this Note (or one or more predecessor Notes) is registered in the Note Register at the close of business on the applicable Record Date for such payment, subject to the Indenture (including, without limitation, Section 2.6(f) thereof). Payments hereunder shall be made by wire transfer in immediately available funds to a Dollar account maintained by the Holders in accordance with wire transfer instructions received by any Paying Agent on or before the applicable Record Date or, if no wire transfer instructions are received by a Paying Agent, by a Dollar check drawn on a bank in the United States in accordance with the Indenture.

As a condition to the payment of any amount hereunder without the imposition of withholding tax, the applicable Paying Agent shall require certification acceptable to it to enable the Co-Issuers, the Trustee, the Credit Enhancer and such Paying Agent to determine their duties and liabilities with respect to any taxes or other charges that they may be required to pay, deduct or withhold in respect of this Note or the Holder hereof under any present or future law or regulation of the Cayman Islands or the United States or any present or future law or regulation of any political subdivision thereof or taxing authority therein or to comply with any reporting or other requirements under any such law or regulation.

Unless the certificate of authentication hereon has been executed by the Trustee or by the Authenticating Agent by the manual signature of one of their Authorized Officers, this Note shall not be entitled to any benefit under the Indenture or be valid or obligatory for any purpose.

If an Event of Default shall occur and be continuing, the Notes may become or be declared due and payable in the manner and with the effect provided in the Indenture.

THIS NOTE SHALL BE CONSTRUED IN ACCORDANCE WITH, AND GOVERNED BY, THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO AGREEMENTS MADE AND TO BE PERFORMED THEREIN WITHOUT REGARD TO THE CONFLICT OF LAWS OR CHOICE OF LAW PRINCIPLES THEREOF.

IN WITNESS WHEREOF, the Co-Issuers have caused this Note to be duly executed, as at 9 July 2015

ZOHAR CDO 2003-1, LIMITED

By: _____
    Name:   Christopher Watler
    Title:    Director


ZOHAR CDO 2003-1, CORP.


By: _____
    Name:
    Title:

CERTIFICATE OF AUTHENTICATION

This is one of the Class A-3b Floating Rate Senior Secured Delayed Drawdown Notes referred to in the within-mentioned Indenture.

U.S. BANK NATIONAL ASSOCIATION,
as Trustee

By: _____
Authorized Signatory

ASSIGNMENT FORM

For value received_____

hereby sells, assigns and transfers unto

_____

_____
Please insert social security or
other identifying number of assignee

Please print or type name and address,
including zip code, of assignee:

_____

_____

_____

_____

the within Note and does hereby irrevocably constitute and appoint _____ Attorney to
transfer the Note on the books of the Co-Issuers with full power of substitution in the premises.

Date:_____        Your Signature:_____

(Sign exactly as your name
appears on the Note)

6.  Permanent Address (if
    different than above):                    _____
                                              _____
                                              _____
                                              _____
                                              _____

7.  U.S. Taxpayer
    Identification or Social
    Security Number (if any):                 *20-3784122*

8.  Payment Instructions:                     *Patriarch Partners XV LLC*
                                              *BB&T Bank*
                                              *Routing #: 053101121*
                                              *Account #: 5294558642*

9.  Instructions for delivery                 *Patriarch Partners XV LLC*
    of Notes:                                 *C/o Chief Compliance Officer*
                                              *One Broadway, 5th Floor*
                                              *NY NY 10004*

B.  **Status**

1.  The Transferee is (i) a "qualified institutional buyer" (within the meaning of Rule 144A
    ("Rule 144A") under the U.S. Securities Act of 1933, as amended (the "Securities Act")) (a "Qualified
    Institutional Buyer") and is acquiring such Notes for its own account or for the account of another
    Qualified Institutional Buyer to whom notice has been given that the transfer is being made in
    reliance on Rule 144A, or (ii) an "accredited investor" within the meaning of Rule 501(a) under the
    Securities Act and, in the case of (i) or (ii), is (I) a "Qualified Purchaser" as defined in Section
    2(a)(51) of the Investment Company Act of 1940, as amended (the "Investment Company Act"), (II) a
    "Knowledgeable Employee" with respect to the Issuer within the meaning of Rule 3c-5 under the
    Investment Company Act or (III) a company beneficially owned exclusively by one or more
    "Qualified Purchasers" and/or "Knowledgeable Employees" with respect to the Issuer (any person in
    (I), (II) or (III), a "Qualified Purchaser").

2.  The Transferee agrees that, prior to any sale or other transfer by it of any of the Notes, it will obtain
    from the subsequent transferee and deliver to the Note Registrar a duly executed transferee
    certificate substantially in the form attached as an exhibit to the Indenture and such other
    certificates and other information as the Co-Issuers, the Collateral Manager or the Trustee may
    reasonably require to confirm that the proposed transfer complies with the restrictions in the legend
    placed on such Notes and in the Indenture.

3.  The Transferee understands that the Notes are being offered only in a transaction not involving any
    public offering in the United States within the meaning of the Securities Act, the Notes have not been
    and will not be registered under the Securities Act, and, if in the future the Transferee decides to offer,